CAPITAL BANK OF ST. PAUL v. SCHOOL DIST. NO. 26, BARNES COUN-
TY.

(Circuit Court of Appeals, Eighth Circuit.   October 15, 1894.)

No. 449.

FEDERAL COURTS—FOLLOWING STATE DECISIONS—CONSTRUCTION OF TERRITOR-
IAL STATUTE BY STATE COURT.

A decision of the supreme court of a state construing a statute of the
territory from which the state was formed (Laws Dak. 1879, c. 14), on
the question of the amount of indebtedness which a school board might
contract for the erection and furnishing of a schoolhouse, even if not
absolutely binding upon the federal courts within the state, should be
followed by them, unless imperative reasons exist for disregarding it.

In Error to the Circuit Court of the United States for the Dis-
trict of North Dakota.

Action by the Capital Bank of St. Paul, Minn., against school
district No. 26, Barnes county, N. D.   Judgment for defendant,
and plaintiff brings error.   Affirmed.

William M. Jones (Daniel V. Samuels and W. Irving Culver, on
the brief), for plaintiff in error.

George K. Andrus, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.   This is a suit which was brought by
the plaintiff in error, the Capital Bank of St. Paul, Minn., against
the defendant in error, school district No. 26, Barnes county, N. D.,
to recover the amount due on nine school warrants, which were al-
leged to have been duly executed and delivered by said school dis-
trict in the month of December, 1881, for the building of a school
house.   The school district pleaded, in substance, and by way of
defense to the action, that the warrants were fraudulently issued
and put in circulation by certain persons who pretended to be officers
of said school district, but who were not such in point of fact;
second, that the warrants in suit were barred by the statute of
limitations of the state of North Dakota; and, third, that the war-
rants were void when issued, because each of them amounted to
more than 1 per cent. of the taxable value of all the property in
said school district for the year 1881; also, because the inhabitants
of said district had never authorized the school board to build a
school house at any meeting of the inhabitants called for that pur-
pose, and because the inhabitants of the district had never selected
a site for a school house.   The case was tried to a jury, and at the
conclusion of the plaintiff's evidence the court directed a verdict for
the defendant, which was accordingly returned.

The facts disclosed by the record, on which the circuit court
appears to have predicated its action in directing a verdict for the
defendant, are substantially as follows:   On the 29th day of Novem-
ber, 1881, the superintendent of schools for the county of Barnes,
in the then territory of Dakota, formed a new school district, con-
sisting of township 139 N., of range 59 W., and township 139

N., of range 60 W., to be known as "School District Number Twenty-Six, Barnes County." At the same time he directed five notices to be posted, calling a first district meeting of the inhabitants of the district to be held on the 17th day of December, 1881. The record does not show what was done thereafter by the inhabitants of the district in the way of further organizing the district, and electing officers thereof; but it does show that on the 21st of December, 1881, eight of the warrants now sued upon were executed and delivered. They were each in the following form:

"No. ———,                        Territory of Dakota.
                                        "Sanborn, Dec. 21st, 1881.
"Treasurer of School District No. 26 of Barnes County:
  "Pay to J. W. Shannon, or bearer, five hundred dollars, out of any moneys in the district treasury belonging to the contingent fund not otherwise appropriated, for building school house.
                                "C. P. Werth, District Clerk.
"$500.00.                          Jacob Werth, Director."

One other warrant in the sum of $500, which was also sued upon, appears to have been drawn as early as December 3, 1881, before the district was formed. Evidence was offered at the trial tending to show that the aforesaid warrants, amounting altogether to $4,013.70, were delivered to J. W. Shannon, the payee therein named, for building and furnishing a school house for said district, which he had agreed to erect and furnish, under a contract made with the school board of the district, for the sum of $4,000 in school warrants. There was evidence further tending to show that after the delivery of the aforesaid warrants, and some time during the early part of the year 1882, Shannon, the payee, had caused a school house to be erected and furnished, which was worth at the time in cash about $1,600. It was also shown that the warrants had been duly sold and assigned to the Capital Bank of St. Paul, Minn., before the commencement of the action. In the course of the trial it was admitted that the assessed valuation of all the real and personal property situated in said school district No. 26, for the year 1881, was $25,035, and that the highest valuation placed upon said property for the purpose of taxation during the period of five years thereafter was $30,540. The foregoing are substantially all of the material facts proven at the trial in the circuit court, on which the plaintiff's right to recover on the warrants then depended, and now depends.

From what has been said it will be seen that the warrants in question were issued when the present state of North Dakota formed a part of the territory of Dakota. The validity of the warrants must therefore be tested by an act of the territorial legislature entitled "An act to establish a public school law for Dakota territory," which was approved on February 22, 1879, and was in force on the 21st of December, 1881, and for some years thereafter. Laws Dak. 1879, c. 14, §§ 16, 25, 29, 39, 56, 57. The supreme court of North Dakota has recently construed the various provisions of this act relating to the selection of school-house sites, the building of school houses, and the issuance of warrants therefor, in a suit which was

brought by this plaintiff.    Capital Bank of St. Paul v. School Dist.
No. 53, 1 N. D. 479, 48 N. W. 363.    That suit, like the one in hand,
was founded on school warrants that had been issued by the district,
under the territorial law aforesaid, to pay for the erection and fur-
nishing of a school house.    The question arose in that case, as in
the case at bar, to what extent the school board of a rural school
district might contract an indebtedness for the erection and fur-
nishing of a school house by issuing school warrants for that pur-
pose; and it was held, in an elaborate opinion, that the amount of
such indebtedness could not exceed the amount of the funds in the
hands of the school board, or subject to collection, for the purpose
of building a school house, and the amount that could be realized
from the maximum tax which could be levied by the inhabitants of
the district, for the current year, for the purpose of building a
school house.    Section 29 of the territorial law above cited provide.
that:

"The inhabitants qualified to vote at a school district meeting, lawfully
assembled, shall have power: * * * (5) To vote a tax annually not ex-
ceeding one per cent. on the taxable property in the district, as the meeting
shall deem sufficient, to purchase or lease a site, and to build, hire or pur-
chase a school house, and to keep the same in repair."

Section 56 of the same act provides that:

"The district board shall purchase or lease such site for a school house
as shall have been designated by the voters at a district meeting in the
corporate name thereof, and shall build, hire or purchase such school house
as the voters in a district meeting shall have agreed upon, out of the funds
provided for that purpose; * * *."

Commenting on these sections of the act, the supreme court of
North Dakota said:

"The manifest purpose of this legislation is to prevent the district, unless
bonds are issued under chapter 24 of the Laws of 1881, from either mort-
gaging the future resources, or increasing beyond one per cent. of the
assessed valuation the present burden of the inhabitants of the district.
The inhabitants, in meeting lawfully assembled, select a site, direct the build-
ing of the school house, and levy a one per cent. tax to pay for the same.
It is out of the funds provided for that purpose that the board is to build
and pay for the house.  The funds provided for that purpose are those on
hand, or subject to collection for that purpose, and, in addition, the amount
which can be raised by the levy of a tax not exceeding one per cent. of
the assessed valuation of the district; and the tax must be levied before
it can be said that the funds are provided.  The inhabitants cannot in any
one year levy this maximum tax for any number of years in advance.  No
funds can be deemed as provided for that purpose which the district has
not then on hand for that purpose, or subject to collection, or which it has
not levied a tax to raise."

In that case the contract for the erection of the school building,
and the warrants issued in compliance therewith, were held void,
because the contract price for the erection of the school house was
largely in excess of the funds on hand and subject to collection, and
the amount that could be raised by the maximum tax for the current
year.    In the case at bar the contract price for the erection of the
school building amounted to about one-sixth of the gross value of
all of the property in the district, real and personal, as valued for

taxation for the year 1881; and the maximum tax which the district could levy for that year, for the purpose of erecting a school house, was scarcely adequate to pay one-half of the annual interest on the warrants that were issued to the contractor. It follows that the warrants were utterly void, for want of power in the school board to execute the building contract and to draw the warrants, if we follow the construction of the statute under which they were issued, that has been adopted by the supreme court of the state of North Dakota, and that had previously been adopted by the supreme court of the territory of Dakota in the case of Farmers' & Merchants' Nat. Bank v. School Dist. No. 53, 42 N. W. 767. It is strenuously urged, however, that this court is not bound by the decision of the state supreme court construing the act aforesaid, because it was a territorial statute, and not a law enacted by the legislature of the state of North Dakota subsequent to its admission into the Union. We shall not stop to inquire at the present time whether the decision of the state court construing a law of the territory out of which the state had been carved should be given the same force and effect as a decision of that court construing an act of the legislature of the state. We conceive that the present case does not require us to express an opinion on that novel proposition. It is sufficient to say at this time that it is highly important to the due administration of justice that courts exercising a concurrent jurisdiction over the same people and territory should, so far as possible, adopt the same construction of local laws. The many evil results that would surely follow if we should disregard the deliberate judgment of the supreme court of North Dakota construing the school laws of the territory of Dakota, under which the great majority of the school districts of that state have doubtless been organized, and under which they have acted for a period of years, are so apparent that we need not stop to describe them, or attempt to enumerate them. It is obvious, we think, that, without reference to the question whether the decision of the state court is absolutely binding upon us, we ought to follow it, unless imperative reasons exist for disregarding it, and no such reasons are disclosed by the present record. The warrants upon which the suit at bar is founded are not negotiable instruments in the sense of the law, merchant. Board Com'rs of Hamilton Co. v. Sherwood (decided at the present term) 64 Fed. 103. They were not purchased by the present plaintiff because of any local decisions which had previously upheld their validity, and given them a currency in the market, on the faith of which the purchaser relied when he made the purchase. Neither is the case one in which the federal circuit court was called upon to construe a statute of the state or territory before its meaning had been authoritatively declared by the courts of the state, for the record before us shows that the present action was commenced in the circuit court of the United States for the district of North Dakota nearly two years after the statute in question had received a definite construction by the supreme court of the state in a suit brought by this plaintiff, the Capital Bank of St. Paul, Minn., against another school district, in the courts of that

state. Under these circumstances, it is manifest that one object which the plaintiff had in view in bringing the present action—and so much was admitted at the bar—was to obtain a review of a. previous decision of the supreme court of the state, and, if possible, a different construction of a local statute. Moreover, the construction of the territorial act of February 22, 1879, which was adopted by the supreme court of the state, is in itself a reasonable construction. The decision of the supreme court of North Dakota, construing the act, rests upon considerations of public policy which are highly persuasive, if not convincing; and any court might well hesitate before it overruled the decision in question, and the decision of the supreme court of the territory as well, even if it felt itself at full liberty to do so.

The views which we have already expressed render it unnecessary to decide whether, as is forcibly contended by the defendant, the plaintiff's cause of action was barred by the statute of limitations of the state of North Dakota, and no opinion will be expressed upon that point. We think that the circuit court acted properly in following this decision of the supreme court of the state in the case heretofore cited, and, so holding, the judgment of the circuit court is hereby affirmed.